## SANFORD, administrator of *Jerusha French, against* HAYES.

In an action brought by *A*, as administrator of *B*, against *C*, *A*, to show his right to sue, produced his letter of administration, granted by the judge of the probate district of *W.*, in which *B*, the intestate, was described as " late of *E.* in the district of *W.*;" and it appeared, that *B*, at the time of her death, in 1845, lived in that part of the town of *W.*, which, in 1846, was incorporated as the town of *E*, and constituted a distinct probate district, the whole of the town of *W.* being previously in the probate district of *W;* it was held, that as such description referred to the right *territory*, though since changed in name and relations, it was sufficiently correct to render the letter of administration admissible in evidence.

*D*, being conservator of *B*, and having the moneys of *B* in his hands, entered into an agreement with *E*, by virtue of which *E* received such moneys, which were to be repaid to *D*, if needed for *B's* support, and after the death of *B*, were to be paid over to the heirs of *E's* mother, the sister of *B*. After the death of *B*, *A*, *B's* administrator, brought an action against *E*, to recover such moneys remaining in his hands. Held, that as the agreement between *D* and *E* could not controul the estate of *B*, after *B's* death, *A* was entitled to recover.

The payment of interest on a debt is a sufficient recognition of that debt, as due at the time of such payment, to take the case out of the statute of limitations.

**This** was an action of *indebitatus assumpsit* for money had and received, brought by *James Sanford*, as administrator of the estate of *Jerusha French*, deceased. The defendant pleaded, 1st, the general issue ; and 2dly, *non assumpsit infra sex annos.*

The cause was tried, on issues formed upon these pleas, and joined to the court, at *Fairfield, February* term, 1849. The court found the facts in the case, of which the following is a summary statement. More than twenty-five years ago, *Ephraim French* was duly appointed conservator of said *Jerusha French*, and continued to be such conservator until her death, which took place in *September*, 1845. She died intestate. At the time of her death, she lived in that part of the town of *Weston*, which, in 1846, was incorporated as the town of *Easton*, and constituted a distinct probate district ; the whole of the town of *Weston* being previously in the probate district of *Weston*. On the 13th of *April*, 1847, letters of administration on the estate of *Jerusha French*, were granted, by the court of probate for the district of *Weston*, to the plaintiff, in which she is described as having been, " late of *Easton*, in said district, deceased, having, while she lived, and at the time of her death, goods, chattels, credits and estate in said *Easton*." It was found, that by this description, the aforesaid *Jerusha French* was intended.

At the time of the appointment of said conservator, *Jerusha French* had three brothers, (of whom the conservator was one,) and one sister, named *Hannah*, who, having married—*Hayes*, died before the death of said *Jerusha*, leaving six children, of whom the defendant, *Asa Hayes*, is one.

About fourteen or fifteen years ago, *Ephraim French*, having in his hands, as conservator of *Jerusha French*, moneys and property belonging to her, and being desirous of getting rid of the trouble of managing the same, placed in the hands of the defendant, one-fourth part of said moneys, on a verbal agreement between them, that the defendant would give his promissory note on interest therefor, and would also pay to said *Ephraim French*, as such conservator, or his successor in office, during the natural life of said *Jerusha*, the interest of said moneys, from the time when they were so placed in his hands, and also, so much of the principal thereof, as should, in addition to the interest, be necessary for de-

fraying the one-fourth part of the expense of supporting said

*Jerusha,* and also one-fourth part of her funeral charges; and that he would, after her death, distribute among, and pay over to, the several heirs of the defendant's mother, who were heirs also of said *Jerusha,* the shares to which they should be legally entitled, of such of the moneys, so placed in the defendant's hands, as should remain unpaid by him. For the moneys so received by the defendant, he gave his promissory note, with interest, pursuant to his agreement. On the 4th of *January,* 1835, he gave up such note, which was then cancelled, and thereupon gave a new note, to *Asa French,* son of said *Ephraim,* for the amount of the sums so placed in his hands, payable on demand with interest, and, at the same time, executed the following agreement : "We, *Jerusha French,* as principal, and *Ephraim French,* as conservator of said *Jerusha,* on one part, and *Asa Hayes,* on the other part, do covenant and bind ourselves to the following, *viz.* We, the said *Jerusha* and *Ephraim French,* do agree to place, and do place, in the hands of said *Asa Hayes,* the sum of 380 dollars, being one-fourth part of the estate of said *Jerusha,* provided that said *Asa Hayes* shall give to *Asa French* sufficient security, and shall increase said security in future time, if necessary—said *Asa French* being the sole judge—that he, the said *Asa Hayes,* shall pay to said conservator, or his successor, or any one under them, the interest of the aforesaid sum, together with the principal, when necessary for the support and maintenance of said *Jerusha,* during her natural life, and paying funeral charges ; provided that the above conditions are faithfully and truly performed, they shall be a full and perfect discharge and satisfaction of all claims on the above covenant.

"*Asa Hayes,* on his part, covenants with said *Ephraim French,* that he, said *Asa Hayes,* will distribute among, and pay over to, the several heirs of his mother, according to their proportions of what remains after supporting said *Jerusha,* and paying her funeral charges ; provided, said heirs do not take their part before *Jerusha's* death. *January* 1st, 1835. [Signed.]              *Ephraim French,* conservator.
                              *Asa Hayes.*"

In the year 1838, pursuant to an agreement then made, between said *Ephraim* and the defendant, a new promissory

note was given, by the defendant, either to said *Ephraim,* or, by his direction and for his use, to said *Asa French,* payable on demand, for the sum of 380 dollars, for which the defendant had before given his note, as above stated; the interest on said sum of 380 dollars, having been, from time to time, paid by the defendant, to the time when such new note was given. After such new note was given, the defendant, at several times, paid the interest which had accrued thereon, to said *Ephraim French,* as conservator, or to said *Asa French,* as his agent, and for his use; several of which payments of interest were made within six years before the death of said *Jerusha,* and also within six years before the 17th of *October,* 1845, when the defendant made and delivered to said *Ephraim,* the following written instrument: "Rec'd of *Ephraim French,* 384 dollars, and 46 cents, it being the one-fourth part of the estate of *Jerusha French,* late of *Easton,* deceased; which I agree to pay to the heirs of my mother, *Hannah Hayes,* deceased, according to their several shares.    *Easton, October* 17th, 1845.    [Signed.]
*Asa Hayes.*"

The plaintiff, after his appointment as administrator, and before the commencement of this suit, *viz.,* on the 2d day of *June,* 1847, demanded of the defendant, payment of the sum specified in the last-mentioned instrument; which the defendant refused and neglected to pay.

On these facts, the question, what judgment should be rendered in the case, was reserved for the advice of this court.

*Dutton* and *Loomis,* for the plaintiff, contended, 1. That the defendant had moneys in his hands belonging to the estate of *Jerusha French,* which the plaintiff, as the administrator of her estate, has a right to recover, in this form of action. *Norton* v. *Strong,* 1 *Conn. R.* 65. 70. *Roorback* v. *Lord,* 4 *Conn. R.* 347. *Eagle Bank* v. *Smith,* 5 *Conn. R.* 71. 75. 1 *Cranch,* 440. *app. Camp* v. *Thompkins,* 9 *Conn. R.* 545. 553. *Steene* v. *Aylesworth,* 18 *Conn. R.* 245.

2. That the claim is not barred, by the statute of limitations. The payment of interest on it, within the time limited, is an admission of a *subsisting debt,* sufficient to take the case out of the statute. It goes to the fact, that the debt is *still due. Clementson* v. *Williams,* 8 *Cranch,* 74. *Lord* v. *Shaler,* 3 *Conn. R.* 131.

3. That the manner in which the moneys came into the hands of the defendant, affords him no defence against the plaintiff's claim.

*Fairfield,*
*June, 1849.*

Sanford
*v.*
Hayes.

4. That the description of *Jerusha French* in the plaintiff's letter of administration, was sufficient.

*Hawley* and *Sturges*, for the defendant, contended, 1. That evidence of a cause of action accruing to *Jerusha French*, of *Weston*, is variant from the allegation of a cause of action to *Jerusha French*, of *Easton*, and therefore, inadmissible. *The People* v. *Morrell*, 21 *Wend.* 563.

2. That the defendant, if liable to any person, other than the heirs of *Hannah Hayes*, is liable to *Ephraim French*. *Foster* v. *Preston*, 8 *Cow.* 198. *Buffum* v. *Chadwick*, 8 *Mass. R.* 103. *Potter* v. *Yale-College*, 8 *Conn. R.* 52. *E. French* has a special interest, not a bare authority. *Thompson* v. *Boardman*, 1 *Verm. R.* 367. 371. The legal title to the money vested in him; and the promise is expressed to him.

3. That there was *no privity of contract* between the plaintiff's intestate and the defendant, without which, this suit cannot be maintained. *Wells* & ux. v. *Cowles*, 4 *Conn. R.* 182. 189. *Mills* v. *Wildman*, 18 *Conn. R.* 124. 128. *Stephens* v. *Badcock*, 3 *B. & Ad.* 354. (23 *E. C. L.* 93.) *Howell* v. *Batt*, 5 *B. & Ad.* 504. (27 *E. C. L.* 115.) *Sims* v. *Brittain*, 4 *B. & Ad.* 375. (24 *E. C. L.* 78.) *Cobbe* v. *Becke*, 6 *Ad. & Ell. N. S.* 929. (51 *E. C. L.* 929.)

4. That the action is barred, by the statute of limitations. *Pittam* v. *Foster* & al. 1 *B. & Cress.* 248. (8 *E. C. L.* 67.) *Ward* & ux. v. *Hunter*, 6 *Taun.* 210. *Sarell*, admr. v. *Wine*, 3 *East*, 409. The debt is extinguished, by the statute; and without a new promise, there is no cause of action. *Bell* v. *Morrison*, 1 *Pet.* 373. *Little* v. *Blunt*, 9 *Pick.* 488. There must be a cause of action subsisting at the time of the testator's death. *Pittam* v. *Foster* & al., *ubi supra.* In this case, the *express* promise to *E. French*, precludes an *implied* one.

HINMAN, J. The plaintiff, as administrator of *Jerusha French*, seeks to recover a sum of money, which belonged to her, in her life-time, which the defendant received as her's,

from the hand of her conservator, and which has never been repaid.   Why ought not the plaintiff to recover it?

1. It is said, that he has no right to bring this action, because the letter of administration describes the deceased as late of *Easton*, whereas in truth *Easton* was not incorporated until after her decease, and she lived and died in *Weston*, which is another probate district.   There is nothing in this objection. *Jerusha French* lived, up to the time of her decease, in that part of *Weston*, which has since been incorporated into the new town of *Easton*, and has been constituted a probate district.   She could not have been properly described as late of *Weston*, because that town is now without the jurisdiction of the court of probate, to which the settlement of her estate belongs ; and to have gone into a statement of the fact, that she died previous to the incorporation of *Easton*, and upon the territory now constituting a part of it and of the new probate district, would be, to require a degree of particularity and certainty in the proceedings of courts of probate, which would be inconvenient in practice, and seems to be wholly unnecessary.

2. It is claimed, that, by the express agreement between the conservator and the defendant, the money was only to be paid during the life of said *Jerusha French*, in case it should be necessary for "her support ;" and that after her decease, it was to be distributed and paid over to the heirs of the defendant's mother, who are also, through her, heirs of said *Jerusha ;* and that no recovery can be had, but by those to whom it was to be paid, by the terms of the agreement.   It should be borne in mind, that this was not only the money of the deceased, but that it was treated as such, in the very contract between the conservator and the defendant.   The parties attempt to settle her estate, before she was dead. This they could not do ; and it was a wrongful act in them, to attempt it.   The conservator had no right to attempt, in this way, to dispose of the money of his ward.   He could not know, that her reason would not be restored to her ; and had such been the case, obviously, she could have called for her money, either from the conservator himself, or from any one, who, with full knowledge of the facts, had received it in aid of any such wrongful disposition of it.   And what she could do, if alive, and capable of acting, her administrator can now do.

3. It is insisted, that the statute of limitations has attached to the claim. The defendant has continued to pay the interest on the money, down to very near the time of said *Jerusha's* death. This is a recognition of the principal as still due. It is true, these payments were made to the conservator; but they were made to him, as conservator; and, of course, recognize *Jerusha* as the principal, to whom the money belonged. This, we think, is sufficient to take the case out of the statute of limitations. We, therefore, advise the superior court, to render judgment for the plaintiff.

*Fairfield,*
June, 1849.

Sanford
*v.*
Hayes.

In this opinion the other Judges concurred.

Judgment for plaintiff.