**MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.  (No. 2472.)**

(Court of Civil Appeals of Texas. Texarkana. March 16, 1922. Rehearing Denied March 30, 1922.)

1. **Eminent domain** ⬦169 — **Application to Railroad Commission to determine mode of crossing of two railroads not condition precedent.**

Rev. St. art. 6701, requiring the Railroad Commission to ascertain the mode of the crossing of railroad tracks, applies only after the proper court has determined in a condemnation proceeding that the right to cross shall be granted, and it is not necessary in the condemnation suit to allege that an application thereunder has been made to the commission.

2. **Eminent domain** ⬦47(2)—**Right to cross tracks of other roads includes essential spurs and side tracks.**

Under Const. art. 10, § 1, and Rev. St arts. 6499, 6501, the right of a railroad com-

pany to cross the tracks of another company is not confined to its main line, and such spurs as run between connecting lines, but extends to all essential spurs and side tracks, if the use of the existing track will not be so interfered with as to seriously impair its service to the public.

**3. Railroads ☞246—Municipality may regulate obstruction of crossings.**

A railroad company builds its line across public streets subject to municipal authority to regulate and prohibit prolonged obstruction of such crossings.

**4. Trial ☞350(3)—Special questions whether railroad could reach ice plant without crossing defendant's track, etc., properly rejected as not decisive.**

In a railroad company's suit to condemn the right to cross another company's spur track at two points to reach an ice plant, special issues as to whether it could reach such plant without crossing defendant's tracks, or by making only one crossing, were properly rejected, as affirmative answers would not have been decisive of the right to condemn.

**5. Eminent domain ☞66—Whether right of condemnation should be granted and at what points railroad should be crossed held question for court to determine.**

In a railroad company's suit to condemn the right to cross another company's spur track at two points to reach an ice plant where the testimony showed serious impediments to the construction of the proposed spur without crossing defendant's track, it was for the court to determine whether the right of condemnation should be granted, and at what points the crossing should be made.

**6. Appeal and error ☞1058(1)—Exclusion of evidence subsequently admitted not reversible error.**

The exclusion of testimony was not reversible error, where its substance was subsequently admitted, and all the material facts were before the jury.

Appeal from Hopkins County Court; Homer L. Pharr, Judge.

Suit by the St. Louis Southwestern Railway Company of Texas against the Missouri, Kansas & Texas Railway Company of Texas and others. Judgment for plaintiff, and defendants appeal. Affirmed.

McMahon, Jones & Jones, of Greenville, for appellants.

Crosby & Harrell, of Greenville, for appellee.

HODGES, J. This suit originated in a condemnation proceeding instituted by the St. Louis Southwestern Railway Company of Texas against the Missouri, Kansas & Texas Railway Company of Texas, and the receiver, for the purpose of securing a right of way for a spur track in the city of Sulphur Springs, Tex. The facts show that the main line of the St. Louis Southwestern Railway Company of Texas runs through the northern part of Sulphur Springs, and the main line of the Missouri, Kansas & Texas Railway Company of Texas runs through the southern portion of that city. The two lines are practically parallel with each other, and approximately one mile part. The appellant has owned and operated for several years a spur called the "boomer track," which branches from its main line a short distance east of its depot, runs in a northerly direction to some industrial plants, and hence to a connection with the appellee's line in the northern portion of the city. In addition to its service as an industrial spur, this track is also at times used as a passing track on which to place freight—and passenger—trains and cars while other trains are passing on the main line, and for storing cars temporarily. The appellant has no terminal yards in Sulphur Springs. The appellee desired to construct a spur beginning near its depot on its main line and west of the boomer track; thence in a southeasterly direction through the city of Sulphur Springs, crossing the boomer track at the intersection of the latter with Houston street; thence in a southerly direction to the vicinity of Fuller street, which runs east and west; thence in a southwesterly direction, again crossing the boomer track at its intersection with Fuller street; thence to a cold storage plant, within a short distance of the appellant's depot and main line. The proposed spur begins and ends on the west side of the boomer track. It touches the appellant's right of way only at the two points named. The proposed crossings, however, are to be made at oblique angles, and will occupy a little more ground than is covered by the streets. The purpose of the proposed spur is to reach the Crystal Ice plant, which is about seven-eighths of a mile from the appellee's main line.

The petition for condemnation alleges and the testimony shows that Sulphur Springs is a shipping point for melons, cantaloupes, berries, and different kinds of fruit, which are usually transported in refrigerated cars. Heretofore the appellee has been compelled to send its cars used for that purpose over another route to have them iced, or to transport the ice on private vehicles at considerable expense and delay, in order to meet the requirements of shippers. It applied to the appellant road for permission to cross its track at the points designated above, and permission was refused, and these proceedings resulted.

In the trial below only two questions were submitted to the jury: The first was:

"Is the proposed spur of the St. Louis Southwestern Railway Company of Texas described in plaintiff's petition to be built for a public purpose?" To this the jury answered, "Yes."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The second was:

"What compensation should be allowed defendant on account of the proposed spur track of the plaintiff crossing the track of the defendant in controversy at Houston street and Fuller alley?" Answer: "Four hundred dollars."

In this appeal the appellant renews its objections to the legal sufficiency of the facts pleaded and proved to authorize a judgment condemning its property for the purposes mentioned.

[1] The first contention is that the petition did not allege that an application had been made to the Railroad Commission as required by article 6701 of the Revised Civil Statutes. That article reads as follows:

"Where it should become necessary for the track of one railroad company to cross the track of another railroad company, it shall be the duty of the Railroad Commission of the state of Texas to ascertain and define by its decree the mode of such crossings which will occasion the least probable injury upon the rights of the company owning the road which is intended to be crossed; and, if it should appear to the said commission that it is reasonable and practicable to avoid a grade crossing, said commission shall by its order prevent the same."

The purpose of this suit is to acquire the legal right to cross the track of another railroad company, not one to determine how the crossing shall be constructed. Hence the issues presented are not those which the Railway Commission may pass upon. When the proper court determines that the right to cross shall be granted, then the commission may regulate the manner in which the crossing shall be made. The article referred to has no application to this proceeding.

[2] The second contention is that under the facts of this case the appellee has no legal right to condemn a right of way over property which the appellant is already devoting to a public use in the form of a necessary spur track. The proposition is thus stated in a written argument filed by counsel for the appellant:

"Under the laws of Texas one railway company has no right or power to take the property of another railway company, unless it be for the purpose of crossing or intersecting the line of a railway company in its route, or for the purpose of making a junction or connecting with such other railway company."

The argument which follows this proposition apparently assumes that the term "route," above used, means the main line of a railroad; or at least that it does not include all spur tracks which a railroad company has the right to construct in furtherance of the purposes for which it is chartered. If that be a correct interpretation of the law regulating the rights of one railroad company to condemn the property of another,

the appellant was entitled to a judgment on its demurrer as well as upon the facts adduced upon the trial. Section 1 of article 10 of the Constitution contains this provision:

"Every railroad company shall have the right, for its road, to intersect, connect with or cross any other railroad."

Article 6499 of the Revised Civil Statutes provides:

"Such corporation shall have the right to cross, intersect, join and unite its railway with any other railway before constructed at any point on its route and upon the grounds of such other railway corporation, with the necessary turnouts, sidings and switches, and other conveniences in furtherance of the object of its connection."

And article 6501 of the Revised Civil Statutes provides:

"If the two corporations cannot agree upon the amount of compensation for any such crossing, intersection or connection, or the points and manner of the same, their differences shall be adjusted in the manner provided by law."

The Constitution confers the right to cross "for its road," while the statute says "at any point on *its route*." That neither the Constitution nor the statute should be construed to limit the right of one railroad to cross the track of another to the purpose of constructing a main line and only such spurs as run between connecting lines was decided in the case of S. &. E. T. Ry. Co. v. G. & I. Ry. Co., 92 Tex. 162, 46 S. W. 784. In that case the G. & I. Railway Company undertook to condemn a right of way across the property of the Sabine & East Texas Railway Company in order to reach the Texarkana & Ft. Smith Railway line, with which the plaintiff in the suit had no physical connection. The route selected by the Gulf & Interstate Railway Company passed through a plat of ground which the Sabine & East Texas Railway Company had purchased for the purpose of being used as a terminal yard at that point, and the objection urged was that the proposed crossing would practically destroy the use for which the property had been acquired. In answering certified questions propounded by the Court of Civil Appeals, the Supreme Court held that under the laws of this state one railroad company may condemn the right of way of another road when necessary to cross it for the purpose of making a connection with a third railroad, although the first and the last roads do not intersect. That ruling recognizes the doctrine that the right of one railroad company to cross the road of another is not limited to an extension of the main line of the road seeking the crossing, but is available for the purpose of extending spur tracks for public use. The right to condemn the property involved in that case was denied only on the ground that the taking would-

practically destroy the use for which the Sabine & East Texas Railway Company had acquired the yards, not because there was no lawful authority for a compulsory crossing of that character. The necessity for one railroad company to cross the tracks of another for the purpose of constructing essential spurs and side tracks in order to render adequate public service is often too imperative to allow the restriction contended for by the appellant in this case. It is true the right to condemn railway property for such a purpose is not as unlimited as the right to condemn private property. While the first occupier of the soil has the prior right to its use, it does not follow that such company should in all cases have the exclusive right. The legal objective is service to the public, not the private advantage of either of the contending corporations. The controlling issue in the pending controversy is reduced to this: Will the condemnation of the crossing selected by the appellee so interfere with the appellant's use of the "boomer" spur track as to seriously impair its service to the public? It is not sufficient to sustain the objection made that some interference be shown, because every crossing of one railroad by another brings into existence some such conditions. Each case must depend upon its own particular facts, and must be determined in accordance with the common rules of justice, keeping in view the purposes for which railway corporations are created.

[3] The judgment of the trial court in this instance involves a finding against the appellant in the material facts, and we think the evidence justified that conclusion. The main objection urged to the proposed crossing is that the use which the appellee intends to make of its line will seriously interfere with the appellant's use of the boomer track as a place for storing its cars and trains; that appellant will be compelled to cut its trains at the Fuller alley crossing in order to allow the appellee to transport its cars to and from the ice plant. That objection loses much of its force when we consider the fact that appellant built its line across those public streets subject to the municipal authority to regulate and prohibit the prolonged obstruction of such crossings. Texas & Pacific Ry. Co. v. Self, 2 Wilson, Civ. Cas. Ct. App. § 439. There was nothing in the evidence to warrant the inference that the appellee would use the proposed spur for any purpose except for the transportation of its cars to and from the ice plant during the fruit season.

[4, 5] Appellant complains of the refusal of the court to submit the two following issues:

"Question 1. Can plaintiff make the connection between its lines of railway in Sulphur Springs and the plant of the Crystal Ice Company without the necessity of crossing any of defendants' railway tracks?

"Question 2. Can plaintiff make the necessary connection between its line of railway and the plant of the Crystal Ice Company in Sulphur Springs by making only the crossing on Fuller street?"

The fact that it is physically practicable for the appellee to reach the Crystal Ice plant without crossing the appellant's track is not alone decisive of the right to condemn the crossings selected. Yet that is all an affirmative answer to these questions would have implied. The testimony showed the existence of serious impediments in the way of constructing the proposed spur entirely on the west side of the boomer track. It was for the court to determine, after considering all the evidence, whether or not the right of condemnation should be granted, and at what points the crossing should be made. G. C. & S. F. Ry. Co. v. Ft. W. & G. R. Ry. Co., 86 Tex. 544, 26 S. W. 54.

[6] It is also contended that the trial court erroneously excluded certain testimony tending to show the extent to which the value of the appellant's track would be impaired by the increased hazards and the probable obstruction of its right of way if the crossings are permitted to be made. The record shows that, while that testimony was excluded on objection at one stage of the trial, the substance of it was subsequently admitted, and all the material facts upon that issue were before the jury.

The judgment is affirmed.

