ACCEPTED
12-14-00329-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/5/2015 9:11:47 AM
CATHY LUSK
CLERK

NO. 12-14-00329-CV

**IN THE**
**TWELFTH COURT OF APPEALS**
**TYLER, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

1/5/2015 9:11:47 AM

CATHY S. LUSK
Clerk

_____

IN RE TARRANT REGIONAL WATER DISTRICT

_____


**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**


_____




Keith Dollahite
State Bar No. 05958550
M. Keith Dollahite, P.C.
5457 Donnybrook Avenue
Tyler, Texas  75701
(903) 581-2110
(903) 581-2113  (Facsimile)
keith@mkdlaw.us



**ORAL ARGUMENT  REQUESTED**

**TABLE OF CONTENTS**

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Court should deny mandamus relief because TRWD has an adequate remedy of
        an accelerated interlocutory appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     Alternatively, the Court should deny mandamus relief because the trial court must
        determine whether it has jurisdiction before it appoints commissioners. . . . . . . . . 4

        A.      As a governmental entity, Lazy W has governmental immunity. . . . . . . . . 4

        B.      The principles governing Lazy W's governmental immunity are well settled.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      Governmental immunity bars a condemnation action unless the statute clearly
                and unambiguously waives such immunity.. . . . . . . . . . . . . . . . . . . . . . . . 7

        D.      The statute granting the power of eminent domain to TRWD does not clearly
                and unambiguously waive the governmental immunity of Lazy W. . . . . . . 12

        E.      TRWD cites no authority for its argument that it can condemn the property of
                a governmental entity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        F.      For the purpose of governmental immunity, this is a suit, not an administrative
                proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        G.      Even if the proceeding in the trial court is in its "administrative phase," Lazy
                W's governmental immunity still applies. . . . . . . . . . . . . . . . . . . . . . . . . 20

        H.      If the Court orders the trial court to appoint commissioners, Lazy W will lose
                the fundamental protection afforded by governmental immunity.. . . . . . . 21

i

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate for Factual Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# INDEX OF AUTHORITIES

Cases

*Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878 (Tex.1973). . . . . . . . . . . . . . . . 8

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 6

*Benat v. Dallas Cnty.*, 266 S.W. 539 (Tex. Civ. App. – Dallas 1924, writ ref'd) . . . . . . 17

*Bennett v. Brown Cnty. Water Imp. Dist. No. 1*, 272 S.W.2d 498 (Tex. 1954). . . . . . . . . 4

*Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.*, 258 S.W.3d 613 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Houston v. Williams*, 353 S.W.3d 128 (Tex.2011). . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Sachse, Texas v. Kansas City S.*, 564 F. Supp. 2d 649 (E.D. Tex. 2008). . . . . . . 19

*Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. LLC*, 369 S.W.3d 845 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *et seq.*

*Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. LLC*, 331 S.W.3d 91 (Tex. App. – Dallas 2010), *rev'd on other grounds*, 369 S.W.3d 845 (Tex. 2012). . . . . . . . . . . . . . . . 7

*Dann v. Athens Mun. Water Auth.*, 2007 WL 2460058 (Tex. App. – Tyler 2007, no pet.) (not released for publication). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*El Paso County v. City of El Paso*, 357 S.W.2d 783 (Tex. Civ. App. – El Paso 1962, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Federal Maritime Com'n v. South Carolina State Ports Authority*, 122 S. Ct. 1864 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Harris Cnty., Texas v. Union Pac. R. Co.*, 807 F. Supp. 2d 624 (S.D. Tex. 2011), *on recon.*, 2012 WL 4339075 (S.D. Tex. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Houston Lighting & Power Co. v. Klein Indep. Sch. Dist.*, 739 S.W.2d 508 (Tex. App. – Houston [14th Dist] 1987, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*In re Energy Transfer Fuel, LP*, 250 S.W.3d 178 (Tex. App. – Tyler 2008, orig. proc.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*In re Francis*, 186 S.W.3d 534 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*In re Santander Consumer USA, Inc.,* 2013 WL 652721 (Tex. App. – Houston [1st Dist.] 2013, orig. proc.) (not released for publication). . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*In re State*, 85 S.W.3d 871 (Tex. App. – Tyler 2002, orig. proc.) . . . . . . . . . . . . . . . . . 15

*In re Texas Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (mandamus denied because TEX. FAM. CODE § 263.405 provided an accelerated appeal). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556 (Tex. 2014). . . . . . . . . . . . . . . . . . 18-19

*Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *et seq.*

*Peak Pipeline Corp. v. Norton*, 629 S.W.2d 185 (Tex. App. – Tyler 1982, no writ) . . . . 15

*Pinnacle Gas Treating, Inc. v. Read*, 160 S.W.3d 564 (Tex. 2005). . . . . . . . . . . . 2, 16-17

*Raymond Overseas Holding, Ltd. v. Curry*, 955 S.W.2d 470 (Tex. App. – Fort Worth 1997, orig. proc.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Sabine & E. Tex. Ry. Co. v. Gulf & Interstate Ry. Co.*, 46 S.W. 784 (Tex. 1898). . . . . . . 8

*Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002). . . . 22

*Texas Parks & Wildlife Dep't v. Garland*, 313 S.W.3d 920 (Tex. App. – Tyler 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 13

*Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004). . . . . . . . . 2, 18

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iv

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003). . . . . . . . . . . . . . . . . . . . 6


Statutes

TEX. CIV. PRAC. & REM. CODE § 51.014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 23, 24

TEX. GOV'T CODE §§ 311.005, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. PROP. CODE § 21.014, *et seq.*. . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. SPEC. DIST. LOC. LAWS CODE § 8380.002, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. UTIL. CODE § 181.004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. WATER CODE § 49.222.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *et seq*.


Rules

TEX. R. APP. P. 28.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3


Other

TEX. CONST. ART. XVI, § 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## ISSUES PRESENTED

1.  Does TRWD have an adequate remedy of an accelerated interlocutory appeal, which precludes mandamus relief?

2.  In a condemnation action against a governmental entity, is a trial court required to appoint commissioners, allow the commissioners to make their award, allow the condemnor to deposit the award with the court, and allow the condemnor to take possession of the property of the governmental entity, before the trial court can rule on the plea to the jurisdiction of the governmental entity?

## STATEMENT OF FACTS

TRWD filed a petition for condemnation against Lazy W – a governmental entity – to take by eminent domain a permanent water pipeline easement and right of way covering 11.623 acres of land owned by Lazy W (CR 1-7). In response, Lazy W filed a plea to the jurisdiction, asserting that its governmental immunity bars this condemnation suit (CR 40-41). After a hearing, the trial court signed an order stating: "the court at this time declines to appoint special commissioners in this case and will only do so, if at all, after a hearing has been set and held on the plea to the jurisdiction of [Lazy W] and a ruling is made by the court on that plea" (CR 619). Instead of proceeding with a hearing on the plea to the jurisdiction, however, TRWD filed this original proceeding, asking the Court to issue a writ of mandamus ordering the trial court to appoint commissioners, to allow the commissioners to make their award, to allow TRWD to deposit the award with the court, and to allow TRWD to take possession of Lazy W's property, before the trial court rules on Lazy W's plea to the jurisdiction.

1

## SUMMARY OF THE ARGUMENT

First, TRWD is not entitled to mandamus relief because TRWD has an adequate remedy of an accelerated interlocutory appeal. If the trial court grants Lazy W's plea to the jurisdiction, TRWD can immediately appeal such ruling in an accelerated interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014; TEX. R. APP. P. 28.1. As a result, the Court should issue an order dismissing this original proceeding and instructing the trial court to rule on Lazy W's plea to the jurisdiction before taking any other action.

Second, if the Court considers TRWD's petition, the Court should deny TRWD's request for a writ of mandamus. A trial court must have jurisdiction to appoint commissioners in a condemnation case. *Pinnacle Gas Treating, Inc. v. Read*, 160 S.W.3d 564 (Tex. 2005). Lazy W's governmental immunity includes immunity from suit, which deprives the trial court of jurisdiction to appoint commissioners. To proceed in this case, TRWD must prove that the Legislature clearly and unambiguously waived Lazy W's governmental immunity. TRWD claims eminent domain power under TEX. WATER CODE § 49.222, but that statute does not even purport to waive the immunity of governmental entities so that TRWD can condemn Lazy W's property. In light of the Supreme Court's mandate that a trial court must rule on a plea to the jurisdiction of a governmental entity before taking any other action in the case, *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004), the trial court properly declined to appoint commissioners before ruling on Lazy W's plea to the jurisdiction.

2

**ARGUMENT**

I.    <u>The Court should deny mandamus relief because TRWD has an adequate remedy of an accelerated interlocutory appeal.</u>

As shown below, Lazy W is a governmental entity with governmental immunity, which bars this condemnation action unless the Legislature has waived its immunity. The trial court held that it must first rule on Lazy W's plea to the jurisdiction before it rules on TRWD's request to appoint commissioners (RR 27). The trial court has not yet ruled on Lazy W's plea to the jurisdiction.

TRWD cites cases in which an appellate court granted mandamus relief in a condemnation action, but the cases did not involve an order for which the relator had the right of an accelerated interlocutory appeal.[1] In this case, the trial court's grant or denial of Lazy W's plea to the jurisdiction will be immediately appealable to this Court in an accelerated interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014; TEX. R. APP. P. 28.1. If the trial court grants Lazy W's plea to the jurisdiction, TRWD can immediately appeal such ruling. Consequently, the Court should deny TRWD's petition for a writ of mandamus because TRWD has an adequate remedy by an accelerated interlocutory appeal. *See In re Texas Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (mandamus denied because TEX. FAM. CODE § 263.405 provided an accelerated appeal). *Accord, In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207

---

[1] Petition at pgs. 9-10.

3

(Tex. 2009); *In re Santander Consumer USA, Inc.,* 2013 WL 652721 (Tex. App. – Houston [1st Dist.] 2013, orig. proc.) (not released for publication); *Raymond Overseas Holding, Ltd. v. Curry*, 955 S.W.2d 470, 471 (Tex. App. – Fort Worth 1997, orig. proc.). *Cf. In re Francis*, 186 S.W.3d 534, 538 (Tex. 2006).

II.     Alternatively, the Court should deny mandamus relief because the trial court must determine whether it has jurisdiction before it appoints commissioners.

A.     As a governmental entity, Lazy W has governmental immunity.

Lazy W is "a municipal utility district created under Section 59, Article XVI, Texas Constitution." TEX. SPEC. DIST. LOC. LAWS CODE § 8380.002. Municipal utility districts are "governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions ... as may be conferred by law." TEX. CONST. ART. XVI, § 59. Lazy W "has the powers and duties necessary to accomplish the purposes for which the district is created." TEX. SPEC. DIST. LOC. LAWS CODE § 8380.101. Lazy W "has the powers and duties provided by the general law of this state, including Chapters 49 and 54, Water Code, applicable to municipal utility districts ...." *Id.* at § 8380.102. A municipal utility district is "a governmental agency and body politic" and has governmental immunity. *Bennett v. Brown Cnty. Water Imp. Dist. No. 1*, 272 S.W.2d 498, 502 (Tex. 1954). *Accord, Dann v. Athens Mun. Water Auth.*, 2007 WL 2460058 (Tex. App. – Tyler 2007, no pet.) (not released for publication).

4

B.      The principles governing Lazy W's governmental immunity are well settled.

"[S]overeign immunity has two components: immunity from suit and immunity from liability." *Texas Parks & Wildlife Dep't v. Garland*, 313 S.W.3d 920, 923 (Tex. App. – Tyler 2010, no pet.).[2] "Immunity from suit is jurisdictional and bars suit; immunity from liability is not jurisdictional and protects from judgments. Sovereign immunity from suit deprives a trial court of subject matter jurisdiction." *Id.* "The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction. Whether a court has subject matter jurisdiction is a question of law." *Id.* "An appellate court addressing a challenge to a trial court's subject matter jurisdiction reviews the trial court's ruling de novo." *Id.*

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent." *Id.* "If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend." *Id.* "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would

---

[2] Internal citations and quotations are omitted throughout this response.

5

constitute a waiver of immunity, the trial court should dismiss the plaintiff's action. Such a dismissal is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Id.* at 923-924.

"In order for the State's immunity to be waived and the trial court to have jurisdiction, a party must show that the State has consented to suit. Consent can be established by statute or legislative resolution." *Id.* at 924. "For the Legislature to waive sovereign immunity by enacting a statute, it must do so by clear and unambiguous language." *Id.* at 925.

"Though closely related and often used interchangeably, sovereign immunity and governmental immunity protect distinct entities." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 n.2 (Tex. 2006). "Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003).

C.      <u>Governmental immunity bars a condemnation action unless the statute clearly and unambiguously waives such immunity.</u>

In *Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845 (Tex. 2012), an electric utility wanted an easement for its electrical transmission line to cross a public transportation commuter rail. Two governmental entities – the Dallas Area Rapid Transit and Fort Worth Transportation Authority – owned and operated the commuter rail. The utility filed its plan for its electric line with the Public Utility Commission, which approved the plan. The utility attempted to negotiate for an easement with the governmental entities, without success. The utility then filed a condemnation proceeding against the two governmental entities for the easement. The governmental entities responded by filing a plea to the jurisdiction asserting that their governmental immunity barred the condemnation action. The trial court denied their plea to the jurisdiction and they appealed.

The Dallas Court of Appeals addressed the utility's four arguments on appeal. First, the utility argued that governmental immunity does not apply because a condemnation case does not seek money damages and is more like the type of declaratory judgment action to which governmental immunity does not apply. Rejecting this argument, the Dallas Court held that governmental immunity applies to a condemnation action:

> It is clear that a suit against the state for condemnation of an easement is a suit to divest the state of property with compensation to be declared by a court.... We cannot see that condemnation actions are free from the doctrine of governmental immunity, while other similar actions against the state are barred by immunity. It is significant to us that the state is immune from a suit to declare the rights to title and

7

> possession of real property, even where such suit does not involve money damages. *See Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App. – Houston [1st Dist.] 2007, no pet.) (citing *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961) ("[w]hen in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained").

*Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. LLC*, 331 S.W.3d 91, 99 (Tex. App. – Dallas 2010), *rev'd on other grounds*, 369 S.W.3d 845 (Tex. 2012).

Second, the utility argued that governmental immunity does not apply because prior cases had recognized the "paramount importance rule,"which holds that if the property to be condemned is already devoted to another public use, then condemnation is inappropriate if the condemnee establishes that permitting condemnation would either practically destroy or materially interfere with the existing public use. *See Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.*, 258 S.W.3d 613, 617 (Tex. 2008); *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 882 (Tex.1973); and *Sabine & E. Tex. Ry. Co. v. Gulf & Interstate Ry. Co.*, 46 S.W. 784, 786 (Tex. 1898). The Dallas Court correctly noted, however, that in the "paramount importance" cases, the condemnee did not raise the defense of governmental immunity. *Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. LLC*, 331 S.W.3d at 99-100. As a result, the Court refused to construe the paramount importance line of cases as authority for the utility's position that governmental immunity does not apply to a condemnation action. *Id.* at 100.

Third, the utility contended that pre-codified eminent domain law gave it the power to condemn public land; that the power to condemn public land necessarily waives governmental immunity; and that the codification of its eminent domain power in TEX. UTIL. CODE § 181.004 did not change is pre-existing power to condemn public lands. The Court examined § 181.004 – the statute that granted the power of eminent domain to the utility – which provides that an electric corporation has the power to "enter on, condemn, and appropriate the land, right-of-way, easement, or other property of *any person* or corporation." TEX. UTIL. CODE § 181.004. The Code Construction Act defines a "person" to include a "governmental subdivision or agency," but also states that doing so "does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." TEX. GOV'T CODE §§ 311.005, 311.034. The Dallas Court noted that "the longstanding mandate from the Texas Legislature and the Texas Supreme Court that a waiver of governmental immunity in a statute must be clearly and unambiguously stated," and that TEX. UTIL. CODE § 181.004, which granted the power of eminent domain to the utility, did not clearly and unambiguously waive the immunity of the governmental entities. *Id.* at 100-106.

Fourth, the utility argued that the Legislature granted the Public Utilities Commission the power to regulate the utility; that the PUC approved the utility's plan for the electric line to cross the public rail; that the governmental entities waived their immunity by not appearing before the PUC and objecting to the utility's plan; and that the governmental

9

entities could not collaterally attack the PUC's approval of such plan in the condemnation case. Rejecting these arguments, the Dallas Court held that the Legislature did not grant the PUC the power to preempt the immunity of any governmental entities; that the governmental entities did not waive their immunity by not participating in the regulatory proceeding before the PUC; and that there was no collateral attack on the PUC's order because the PUC could not and did not grant an easement over the land of the governmental entities. *Id.* at 106-107.

Based upon the foregoing rulings, the Dallas Court of Appeals held that the governmental entities' immunity barred the utility's condemnation action against them and dismissed the utility's condemnation action with prejudice. *Id.* at 107. The utility then filed a petition for review, which the Texas Supreme Court granted. *Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845 (Tex. 2012). While the utility's petition for review was pending, the Legislature added Section 37.053(d) to the Utilities Code, which provides: "For transmission facilities ordered or approved by the [PUC] ..., the rights extended to an electric corporation under Section 181.004 [i.e., eminent domain] include all public land, except land owned by the state, on which the commission has approved the construction of the line." *Id.* at 848.

In its opinion, the Texas Supreme Court stated: "We assume, without deciding, that governmental entities are immune from condemnation suits." *Id.* at 849. The Supreme Court then discussed how to analyze whether or not the statute granting the power of eminent domain waives such immunity. The Court noted that "a waiver of governmental immunity

must be clear and unambiguous." *Id.* The Dallas Court of Appeals had addressed the issue of whether TEX. UTIL. CODE § 181.004 – which granted eminent domain power to the utility – contained a clear and unambiguous waiver of the immunity of a condemnee that is a governmental entity. The Supreme Court then explained its analysis of the issue:

> Were we to apply that standard to Section 181.004, our analysis would proceed along these lines. Section 181.004 confers on gas and electric utilities a power of eminent domain over the "property of any person or corporation." Since the adoption of the Code Construction Act in 1967, the Legislature has instructed that in construing its codes, the word "person" includes the "government or governmental subdivision or agency" "unless the statute or context ... requires a different definition." But in 2001, the Legislature added that "the use of 'person' ... to include governmental entities[ ] does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." These directives do not establish whether Section 181.004 waives immunity and shed no light at all on what the Legislature intended by its use of the word "person" in general statutes – not codes – enacted in 1911, when the predecessor to Section 181.004 was first enacted. The court of appeals was not persuaded by [the utility's] arguments that a utility's power to condemn public lands was recognized in early case law. And while the Authorities are "corporate bod[ies],"one may certainly question whether that statutory description of their capacity brings them within the entities whose property can be condemned by a gas or electric corporation. In short, whether Section 181.004 clearly and unambiguously waives a government landowner's immunity is a difficult question.

*Id.* 849-850. After noting that the appeal raised a "difficult question," the Court stated "it is one we need not answer here because our focus instead is on Section 37.053(d)," the new statute passed while the appeal was pending in the Supreme Court. The Court then held that

11

the new Section 37.053(d) clearly and unambiguously waived the immunity of the governmental entities in an action filed by an electric utility and applied retroactively to the governmental entities. As a result, the Supreme Court reversed the Court of Appeals and remanded the case to the trial court. *Id.*

D.    The statute granting the power of eminent domain to TRWD does not clearly and unambiguously waive the governmental immunity of Lazy W.

In its petition for condemnation, TRWD alleged that it "has the power of eminent domain under Texas Water Code § 49.222 to acquire land, property and easements by condemnation in the manner provided in the Texas Property Code" (CR 2). Section 49.222 provides:

> (a) A district or water supply corporation may acquire by condemnation *any land, easements, or other property* inside or outside the district boundaries, or the boundaries of the certificated service area for a water supply corporation, necessary for water, sanitary sewer, storm drainage, or flood drainage or control purposes or for any other of its projects or purposes, and may elect to condemn either the fee simple title or a lesser property interest.
>
> (b) The right of eminent domain shall be exercised in the manner provided in Chapter 21, Property Code, except that a district or a water supply corporation shall not be required to give bond for appeal or bond for costs in any condemnation suit or other suit to which it is a party and shall not be required to deposit more than the amount of any award in any suit.
>
> (c) The power of eminent domain may not be used for the condemnation of land for the purpose of acquiring rights to underground water or of water or water rights.

TEX. WATER CODE § 49.222.

12

As noted above, "for the Legislature to waive sovereign immunity by enacting a statute, it must do so by clear and unambiguous language." *Texas Parks & Wildlife Dep't v. Garland*, 313 S.W.3d 920, 925 (Tex. App. – Tyler 2010, no pet.). "In construing a statute, our primary objective is to determine and give effect to the legislature's intent in enacting it. In determining legislative intent, we examine the entire act, not just isolated portions of it." *Id.* at 924-925. "We start with the plain and common meaning of the statute's words. Unless the statute is ambiguous, we determine the legislature's intent from the language of the statute itself. We must presume that every word of the statute has been used for a purpose and that every word excluded from the statute has been excluded for a purpose." *Id.* at 925. "We should not insert words into the statute except to give effect to clear legislative intent. We presume that the legislature enacted the statute with complete knowledge of existing law and with reference to it. We also may consider the object sought to be obtained by the statute and the consequences of a particular construction." *Id.*

Applying these principles to TEX. WATER CODE § 49.222, nothing in the statute clearly and unambiguously waives Lazy W's governmental immunity as to a condemnation action. The statute analyzed in *Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845 (Tex. 2012), granted the power of eminent domain over the "property of any *person* or corporation," and thereby raised an issue of whether the term "person" included a governmental entity. *Id.* 849-850. By contrast, TEX. WATER CODE § 49.222 does not use the term "person;" it only refers to the condemnation of "any land, easements, or other

13

property." Thus, § 49.222 does not even contain the only possible basis for waiver discussed in *Oncor Elec. Delivery Co. LLC*. Furthermore, § 49.222 does not grant the power to condemn "*public* land." But even if it did refer to "public land," it would not clearly and unambiguously waive Lazy W's governmental immunity because a "general provision that ... utilities can condemn public land might be construed merely to recognize a power that cannot be exercised without a specific waiver of immunity, just as a statute authorizing a governmental entity to 'be sued' does not waive immunity for all suits." *Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 850 (Tex. 2012). In summary, § 49.222 does not clearly and unambiguously waive Lazy W's governmental immunity to this condemnation case.

E. TRWD cites no authority for its argument that it can condemn the property of a governmental entity.

TRWD argues it is "not unprecedented for one governmental entity to bring a condemnation action against another governmental entity," citing *El Paso County v. City of El Paso*, 357 S.W.2d 783, 786 (Tex. Civ. App. – El Paso 1962, no writ). But *El Paso County* is not even a condemnation case: it is a declaratory judgment action regarding a county's transfer of land to a city. In its petition, TRWD does not present any authority indicating that the Legislature has waived Lazy W's governmental immunity for this condemnation action.

14

F. **For the purpose of governmental immunity, this is a suit, not an administrative proceeding.**

TRWD agues that its action in the trial court is still in an "administrative phase" and as a result, "there is no civil lawsuit and the trial court's subject matter is not invoked."[3] This argument is without merit for four reasons. First, none of TRWD's authorities for this proposition involve governmental immunity. TRWD cites cases addressing the inability of the trial court to interfere with the statutory authority of the commissioners and their award. *See, e.g., In re Energy Transfer Fuel, LP*, 250 S.W.3d 178, 182 (Tex. App. – Tyler 2008, orig. proc.) (trial court exceeded its jurisdiction when it entered a judgment containing additional provisions not contained in the commissioners' award); *In re State*, 85 S.W.3d 871, 875 (Tex. App. – Tyler 2002, orig. proc.) (trial court was not authorized to award expenses to special commissioners during the administrative phase of a condemnation proceeding); *Peak Pipeline Corp. v. Norton*, 629 S.W.2d 185, 187 (Tex. App. – Tyler 1982, no writ) (trial court could not grant plea in abatement based upon the pendency of another case and dismiss the condemnation proceeding before the commissioners filed their award with the court). TRWD relies upon a line of cases that address the inability of the trial court to interfere with the actions of the commissioners before they file their award. None of the cases involves a condemnee who has governmental immunity. None of TRWD's cases even mentions governmental immunity.

---

[3] Petition at pg. 11.

15

Second, when a trial court appoints commissioners in a condemnation case, it does so by exercising the court's jurisdiction over the case. If the trial court does not possess and exercise such jurisdiction, it cannot appoint commissioners. These elementary principles are illustrated in *Pinnacle Gas Treating, Inc. v. Read*, 160 S.W.3d 564 (Tex. 2005). A pipeline filed eight condemnation cases in Leon County. Pursuant to TEX. PROP. CODE § 21.013(d), the district clerk distributed the eight cases among the three courts serving the county: the 12th, 87th, and 278th district courts. But only one of the district courts – the 87th – signed all the orders appointing special commissioners in all eight cases. Thereafter, the commissioners in a case assigned to the 278th district court rendered their award, the pipeline filed its notice of deposit, the 87th district court granted a writ of possession to the pipeline for the easement, and the pipeline filed an objection to the commissioners' award. *Id*. at 565. The pipeline filed a motion for partial summary judgment in the 278th district court to establish that it was entitled to condemn the property as a matter of law. In response, the landowners filed a plea to the jurisdiction and a motion to dismiss, arguing that the 87th district court never had jurisdiction to appoint the commissioners because the case was assigned to the 278th district court, and the 278th district court never transferred the case to or exchanged benches with the 87th district court, which had appointed the commissioners. *Id*. at 565-566. Agreeing with the landowners, the Court of Appeals held that the 87th district court lacked jurisdiction to appoint the commissioners because the 278th district court never exchanged benches or transferred the case. *Id*. at 566.

16

The Supreme Court disagreed and held that both district courts had concurrent jurisdiction over the pipeline's eminent domain case; the Texas Constitution allowed district judges hold court for each other; and that no formal order was needed for an exchange or transfer to occur. The Supreme Court held that the judge of the 87th district court had "jurisdiction irrespective of whether his appointment of the commissioners was erroneous." *Id.* at 566.

By asking the trial court to appoint commissioners before ruling on the plea to the jurisdiction, TRWD is asking the trial court to exercise its threshold subject matter jurisdiction in a condemnation case to appoint commissioners. But "immunity from suit deprives a trial court of jurisdiction." *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex.2011). Lazy W's governmental immunity negates the trial court's threshold jurisdiction that it must have to take the first step of appointing commissioners, a threshold jurisdiction the Supreme Court recognized in *Pinnacle Gas Treating, Inc. v. Read*. If the trial court does not have and exercise such threshold subject matter jurisdiction, it cannot appoint commissioners. *See Benat v. Dallas Cnty.*, 266 S.W. 539, 540 (Tex. Civ. App. – Dallas 1924, writ ref'd) (petition filed by a condemnor that did not have the power of eminent domain conferred no jurisdiction on the trial court to appoint commissioners). If TRWD had filed its petition in the "High Court of the Republic of Texas," would such "court" then been able to appoint commissioners under TEX. PROP. CODE CH. 21 merely because TRWD filed its petition in such "court"? Of course not. The trial court properly decided to rule on Lazy W's

17

plea to the jurisdiction and determine whether or not it has the necessary jurisdiction to appoint commissioners before actually taking the step of appointing commissioners.

Third, the Supreme Court has instructed trial courts to rule on a plea to the jurisdiction of a governmental entity before taking any other action in the case: "The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The rationale for this mandate is obvious. "When the court that renders a judgment had no jurisdiction ... the judgment is void. A void judgment is an absolute nullity and has no legal force or effect." *In re Energy Transfer Fuel, LP*, 250 S.W.3d 178, 181 (Tex. App. – Tyler 2008, orig. proc.). If Lazy W's governmental immunity negates the trial court's jurisdiction to appoint commissioners, but the trial court nonetheless were to appoint commissioners, who then render an award, requiring Lazy W to object to the award, the entire proceeding would be void, resulting in a complete waste of time and resources. The Supreme Court's mandate that the trial court must first rule on a plea to jurisdiction before taking any other action is designed to avoid such a waste of time and resources.

Fourth, regardless of TRWD's characterization of the status of the action in the trial court as an "administrative," it is a "suit" for purposes of governmental immunity. A "suit" is "any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 564

18

(Tex. 2014). Section 49.222 – the statutory basis for TRWD's power of eminent domain – expressly refers to this action filed against Lazy W as a "suit." TEX. WATER CODE § 49.222(b) ("a district or a water supply corporation shall not be required to give bond for appeal or bond for costs in any *condemnation suit* or other suit to which it is a party ...."). Section 49.222(b) also says the "right of eminent domain shall be exercised in the manner provided in Chapter 21, Property Code." Chapter 21 in turn refers to condemnation actions nineteen times as "cases" and twice as "suits."

In *City of Sachse, Texas v. Kansas City S.*, 564 F. Supp. 2d 649, 653 (E.D. Tex. 2008), a city filed a condemnation proceeding against a railroad and the trial court appointed commissioners. Before the commissioners rendered an award, however, the railroad removed the condemnation case to federal court. The city filed a motion to remand, arguing that its condemnation proceeding was still in its "administrative phase," and therefore was not a "case" subject to removal. Rejecting the city's argument, the District Court held that the "state court proceeding, even at its administrative stage, is a 'civil action brought in a State court'" within the scope of the federal removal statute. *Id.* at 654-655. *Cf. Harris Cnty., Texas v. Union Pac. R. Co.*, 807 F. Supp. 2d 624, 628 (S.D. Tex. 2011), *on recon.*, 2012 WL 4339075 (S.D. Tex. 2012).

In short, TRWD's condemnation action against Lazy W in the trial court is a "suit" for the purpose of governmental immunity.

G.      Even if the proceeding in the trial court is in its "administrative phase," Lazy W's governmental immunity still applies.

In reality, however, it makes no difference whether the action in the court below is characterized as an "administrative phase" or as a "suit." Governmental immunity applies with equal force to both. For example, in *Federal Maritime Com'n v. South Carolina State Ports Authority*, 122 S. Ct. 1864 (2002), a cruise company filed a complaint with a federal agency (the Federal Maritime Commission) contending that a state agency (the South Carolina State Ports Authority) violated federal law when the state agency denied the cruise company permission to berth its cruise ship at the state agency's port. The Administrative Law Judge found that the state agency was entitled to sovereign immunity and dismissed the complaint.

In the United States Supreme Court, the federal agency argued that "sovereign immunity only shields States from exercises of 'judicial power' and [agency] adjudications are not judicial proceedings." *Id.* at 1871.  The Court disagreed, noting that an administrative proceeding before the federal agency "walks, talks, and squawks very much like a lawsuit." *Id.* at 1873. The Court noted that a "State seeking to contest the merits of a complaint filed against it by a private party must defend itself in front of the [agency] or substantially compromise its ability to defend itself at all." *Id.* at 1875. The Court held that state sovereign immunity bars such an adjudicative proceeding before a federal agency against a state agency. *Id.* at 1868.

20

H. **If the Court orders the trial court to appoint commissioners, Lazy W will lose the fundamental protection afforded by governmental immunity.**

In this condemnation case, once the trial court appoints commissioners, they must "promptly schedule a hearing" to occur no sooner than twenty days after their appointment. TEX. PROP. CODE § 21.015(a). The commissioners can "compel the attendance of witnesses and the production of testimony, administer oaths, and punish for contempt in the same manner as the county judge." *Id.* § 21.014. Upon the conclusion of the hearing, the commissioners render a written award and "assess damages ... according to the evidence presented at the hearing." *Id.* § 21.042(a). TRWD can then obtain immediate possession of Lazy W's property by depositing the amount of the award with the court. *Id.* § 21.021. Lazy W would then be forced to file objections to the commissioners' award, and the case would proceed to trial as any other civil case. *Id.* § 21.018. Importantly, by making the deposit of the award with the court, TRWD would remain in possession of Lazy W's land throughout the pendency of the litigation until it is concluded. *Id.* § 21.021.

After the conclusion of the litigation, if Lazy W prevails and establishes that its governmental immunity barred this action, the ability of Lazy W to recover damages from TRWD is uncertain. Although § 21.044 appears to provide a remedy to Lazy W, courts have construed this remedy narrowly. *Houston Lighting & Power Co. v. Klein Indep. Sch. Dist.*, 739 S.W.2d 508, 518 (Tex. App. – Houston [14th Dist] 1987, writ denied) ("Texas courts have construed this language as limiting condemnation damages to the market value of the property itself.").

21

TRWD is asking this Court to hold that before ruling on Lazy W's plea to the jurisdiction, the trial court *must* appoint commissioners, allow the commissioners to make their award, allow TRWD to deposit the award with the trial court, and allow TRWD to take possession of Lazy W's property until the conclusion of this litigation. If the Court adopts TRWD's position, then –

- TRWD could file a petition for condemnation against the State of Texas, take possession of the Alamo,[4] and retain possession until the conclusion of the litigation several years later.

- TRWD could file a petition for condemnation against the Cities of Dallas and Fort Worth, take possession of the Dallas/Fort Worth International Airport, and retain possession until the conclusion of the litigation several years later.

- TRWD could file a petition for condemnation against Smith County, take possession of the offices and courtroom of the Twelfth Court of Appeals, and retain possession until the conclusion of the litigation several years later.

According to TRWD, the trial court *cannot* rule on a plea to the jurisdiction before TRWD takes possession of Lazy W's property. The fundamental purpose of governmental immunity is to protect government property. *Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006); *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). Adopting TRWD's position will destroy the fundamental purpose of governmental immunity when public property is at issue. Adopting TRWD's position will also have a far-reaching impact because 9,245 entities in Texas claim to possess the power of eminent domain, including governmental entities (such as municipalities, utility districts, counties,

---

[4] TRWD can condemn and take property "inside or outside the district boundaries" of TRWD under TEX. WATER CODE § 49.222(a),

water districts, housing authorities, economic development corporations and hospital districts) and non-governmental entities (such as water supply corporations, oil, gas and pipeline companies, and electric cooperatives).[5] Adopting TRWD's position will enable each of these 9,245 public and private entities to file a condemnation case and take possession of the property of a governmental entity before the trial court can rule on the governmental entity's plea to the jurisdiction.

By contrast, allowing the trial court to rule on Lazy W's plea to the jurisdiction before it appoints commissioners will preserve the protection of governmental immunity and promote judicial economy. The trial court's grant or denial of Lazy W's plea to the jurisdiction will be immediately appealable to this Court. TEX. CIV. PRAC. & REM. CODE § 51.014. On one hand, if the appellate courts rule that the Legislature has not waived Lazy W's governmental immunity for this condemnation action, then the matter is concluded. On the other hand, if the appellate courts hold that the Legislature has waived Lazy W's immunity, then the trial court can appoint commissioners, the commissioners can make their award, TRWD can deposit the award with the court, and TRWD can take possession of Lazy W's property until the conclusion of the litigation.

---

[5] http://window.texas.gov/specialrpt/eminent_domain/index.html

In short, granting TRWD's request for mandamus relief will give TRWD what it ultimately seeks in this case – possession of Lazy W's land – without affording Lazy W the opportunity to have the trial court rule on its governmental immunity. Such a result would deny Lazy W the fundamental protection afforded by its governmental immunity.

## PRAYER

As explained above, TRWD is not entitled to mandamus relief because TRWD has an adequate remedy of an accelerated interlocutory appeal under TEX. CIV. PRAC. & REM. CODE § 51.014. The Court should issue an order dismissing this original proceeding and instructing the trial court to rule on Lazy W's plea to the jurisdiction before taking any other action. In the alternative, if the Court considers TRWD's petition, the Court should deny TRWD's request for a writ of mandamus because the trial court must rule on Lazy W's plea to the jurisdiction before it can take any other action in this case.

Respectfully submitted,

M. KEITH DOLLAHITE, P.C.
5457 Donnybrook Avenue
Tyler, Texas 75701
(903) 581-2110
(903) 581-2113 (Facsimile)
keith@mkdlaw.us

/s/ Keith Dollahite
By:_____
M. Keith Dollahite
State Bar No. 05958550

24

EVAN LANE (VAN) SHAW
State Bar No. 18140500
van@shawlaw.net
COLLEN R. MEYER
State Bar No. 24074709
collen@shawlaw.net
LAW OFFICES OF VAN SHAW
2723 Fairmount
Dallas, Texas 75201
(214) 754-7110 (Telephone)
(214) 754-7115 (Facsimile)

MARTIN BENNETT
State Bar No. 00795037
mbennett@ksbpc.com
KUGLE, SKELTON & BENNETT, P.C.
130 E. Corsicana, Suite 302
Athens, Texas 75751
(903) 675-5151 (Telephone)
(903) 677-4950 (Facsimile)

ROBERT HAIMAN
State Bar No. 00796690
roberthaiman@remingtonhotels.com
14185 Dallas Parkway, Suite 1150
Dallas, Texas 75254
(972) 778-9312 (Telephone)
(972) 392-1929 (Facsimile)

## CERTIFICATE FOR FACTUAL STATEMENTS

Pursuant to TEX. R. APP. P. 52.3(j) and 52.4, I certify that I have reviewed the response and concluded that every factual statement in the response is supported by competent evidence included in the appendix or record.

/s/ Keith Dollahite

_____

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this document contains 6,345 words based on the word count of the computer program used to prepare the document, excluding the sections not counted under TEX. R. APP. P. 9.4(i)(1), which is below the maximum of 15,000 words in TEX. R. APP. P. 9.4(i)(2).

/s/ Keith Dollahite

_____

**CERTIFICATE OF SERVICE**

A copy of this document was served by email to the parties listed below on January 5, 2015.

/s/ Keith Dollahite

_____

| | |
|---|---|
| Hal R. Ray, Jr.<br>Michael L. Atchley<br>500 West 7th Street, Suite 600<br>Fort Worth, Texas 76102-4995<br><br>Tom Henson<br>Ramey & Flock, P.C.<br>100 East Ferguson, Suite 500<br>Tyler, Texas 75702<br><br>Jeffrey L. Coe<br>Law Office of Jeffrey L. Coe<br>P.O. Box 1157<br>Palestine, Texas 75802-1157 | Christopher D. Tinsley<br>117 E. Tyler Street<br>Athens, Texas 75751<br><br>Monty Bennett<br>14185 Dallas Parkway, Suite 1100<br>Dallas, Texas 75254<br><br>Honorable Joe Clayton<br>100 E. Ferguson, Suite 1114<br>Tyler, Texas 75702 |